**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHRISTINE V. WALKER, ) | |
| ) | CASE NO.    1:08-CV-2802 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Christine Walker ("Walker") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court VACATES and REMANDS the final decision of the Commissioner for further proceedings consistent with this opinion.

**I.  Procedural History**

On January 26, 2004, Walker filed an application for SSI alleging a disability onset date

of January 1, 2004 and claiming that she was disabled due to pain. Her application was denied both initially and upon reconsideration. Walker timely requested an administrative hearing.

On June 13, 2007, an Administrative Law Judge ("ALJ") held a hearing during which Walker, represented by counsel, testified. Malcolm A. Brahms, M.D., testified as the Medical Expert ("ME") and Ted S. Macy testified as the Vocational Expert ("VE"). On June 25, 2007, the ALJ found Walker was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On appeal, Walker claims the ALJ erred by: (1) failing to follow the requirements of SSR 96-7p and 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3) with respect to his credibility finding; and, (2) improperly rejecting the findings of treating and examining physicians in favor of a non-examining expert who was unqualified to assess fibromyalgia. (Doc. No. 16.)

## II. Evidence

*Personal and Vocational Evidence*

Born on October 8, 1971 and age thirty-five at the time of her administrative hearing, Walker is a "younger" person under social security regulations. See 20 C.F.R. § 416.963(c). She has high school education and no past relevant work. (Tr. 23.)

*Medical Evidence*[1]

In a letter dated December 18, 2003, Bruce Long, M.D., indicated that Walker had complained of lower back pain since 1999, which worsened after a motor vehicle accident in

---

[1] Walker's medical record is quite extensive and the following summary is not intended to be exhaustive.

April of 2003. (Tr. 174.) Dr. Long noted that an EMG and nerve conduction study on October 15, 2003 yielded normal results, and an MRI performed in November of 2003 revealed no disc herniation or spinal stenosis. *Id*. He noted that Walker was morbidly obese, weighing 314 pounds. (Tr. 175.) Cardiac, lung, and abdominal examinations were unremarkable, save for right upper quadrant tenderness on palpation of her abdomen. *Id*. She was tender on palpation of 10 out of 18 fibromyalgia Smythe points. *Id*. She was prescribed Mobic. *Id*. Dr. Long's impression was fibromyalgia syndrome. *Id*. He opined that her weight was a contributing factor to her joint complaints and tendinopathies. *Id*.

On January 8, 2004, Rich Wallis, physical therapist, performed an initial evaluation of Walker. (Tr. 192-93.) He noted moderate restriction in right knee mobility and severe restriction in left knee mobility. *Id*. He further noted a major loss of lumbar spine flexion and moderate loss of extension. *Id*.

May 2004 x-rays of the lumbar spine showed no evidence of compression fracture, disc space narrowing, or spondylolisthesis (Tr. 448).

In a letter dated June 10, 2004, Dr. Long referred Walker to Hong Shen, M.D., for management of her chronic pain. (Tr. 447.) He noted her lack of success with nonsteroidal anti-inflammatory medications (NSAIDs), analgesics, and physical and occupational therapy. *Id*. He further noted that x-rays of Walker's back taken in May of 2004 were unremarkable and laboratory results concerning connective tissue disorder were negative. *Id*. Her medications included Prednisone and Vicodin. *Id*.

On June 14, 2004, Walker presented at the emergency room ("ER") with complaints of generalized pain. (Tr. 250.) She was able to move her toes, fingers, hands and wrists without

3

difficulty despite her moans and groans while doing so. (Tr. 250.) She exhibited limited range of neck motion. (Tr. 251.) Hands and fingers appeared swollen and there was marked restriction of motions. *Id*. She was markedly obese. *Id*.

On June 23, 2004, Walker presented at a different ER with complaints of "pain all over." (Tr. 214.) Examination revealed full range of motion in all extremities. *Id*. Sensation, gait, strength and speech were all normal. (Tr. 214.) She was treated with morphine intravenously. (Tr. 215.)

On July 21, 2004, Walker reported to Dr. Shen that her pain level was 6 out of 10 and that she was having trouble sleeping. (Tr. 239.)

On August 20, 2004, Walker was again seen by Dr. Shen complaining of total body pain after walking on the beach for a whole day. (Tr. 235.) She exhibited significant pain behaviors while at the clinic. *Id*. She also demonstrated normal gait with a rolling walker, but moaned during ambulation. *Id*. She had decreased range of motion in the lumbar spine. *Id*. Dr. Shen reviewed an MRI and an x-ray of Walker's spine finding no abnormality. *Id*. He opined that Walker's back pain may be the result of her morbid obesity. *Id*. He prescribed Topomax and referred her for aquatics treatment. (Tr. 235.)

On September 13, 2004, Walker presented at the Fairview Hospital ER with complaints of chest pain. (Tr. 314.) All tests were negative. (Tr. 315.) A psychiatric consultation was performed, and the examining doctor, R. Dale, M.D., believed the patient was suffering from somatization disorder. (Tr. 315; 477.) Dr. Dale encouraged the use of Topamax over Neurontin, as the former often results in weight loss while the latter can lead to weight gain. (Tr. 477.) Despite her assertion that she needed the assistance of two people even when using her walker to

4

ambulate, the hospital staff twice observed her easily getting out of her chair and move to the bathroom using only her walker. (Tr. 475.)

On October 8, 2004, Dr. Shen noted that Walker "ambulates with a wobbling gait secondary to her morbid obesity." (Tr. 233.) However, she had no difficulty transferring and did not use an assistive device to walk. *Id*. She stated that the Topomax was helpful. *Id*.

On November 12, 2004, Charles Derrow, M.D., completed a Physical Residual Functional Capacity Assessment form at the State Agency's request. (Tr. 288-92.) Dr. Derrow noted that Walker's primary diagnosis was fibromyalgia with a secondary diagnosis of asthma. *Id*. Based on the evidence, he opined that Walker could lift fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push or pull without restriction. *Id*. He also found that no postural, manipulative, visual, communicative, or environmental limitations were established. *Id*. This qualified Walker for medium exertional work. He concluded that Walker was not credible, as her allegations far exceeded the objective medical evidence. *Id*.

X-rays taken on November 24, 2004 of Walker's lumbar spine were normal. (Tr. 351.) On November 26, 2004, Walker fell down the stairs resulting in a fracture of the pelvic ring and partial injury to the right sacroiliac joint. (Tr. 461.) Jesse Templeton, M.D., performed a surgical repair without complications. *Id*.

On July 18, 2005, Howard Smith, M.D., examined Walker and noted she had no musculoskeletal abnormalities, swelling, erythema, or tenderness. (Tr. 569.) She exhibited full range of motion, and had no soft tissue swelling or joint instability. *Id*. Dr. Smith noted there are "tender points diffusely in the trigger tender points for fibromyalgia." *Id*. She was instructed

to exercise and lose weight. *Id*.

On September 6, 2005, Walker had ceased using a walker but used a cane "on and off" as needed. (Tr. 399.) She stated that she could not climb stairs because it was too painful and that she needed help from her husband to bathe and get dressed. *Id*. A physical therapy plan was developed which called for Walker to attend aquatherapy followed by other training and home exercises. (Tr. 400.) She completed her pool program and met several goals, including tolerating forty-five minute sessions. While she achieved greater ease with ambulation and transferring, she reported no decrease in her level of pain. (Tr. 382.)

On October 6, 2005, Walker reported that she was working despite her pain being aggravated by her job duties. (Tr. 567.) On examination, she exhibited hip joint tenderness on abduction and adduction, but no straight leg raising tenderness or loss of sensation. *Id*. Her reflexes were normal. *Id*. The examining doctor, Howard Smith, M.D., observed points tenderness on the neck, head, scapulae, back muscles, and on both sides of the hip and knee joints. *Id*.

On January 19, 2006, Walker was seen by Delali Hevi. M.D. (Tr. 565.) Dr. Hevi noted Walker's complaint of pain that radiated to both upper and lower extremities. *Id*. She stated her pain was nine out of ten. *Id*. Examination revealed that Walker was not in obvious distress and had diffuse mild to moderate tenderness all over her body. *Id*. Dr. Hevi prescribed Lyrica for a trial period. *Id*.

On June 23, 2006, Billy Brown, M.D., suggested Walker lose one-hundred pounds and asked her to consider Bariatric surgery, which closes off a portion of the stomach. (Tr. 731.)

On September 1, 2006, Walker complained to Dr. Brown of worsening pain in her knees,

6

hips, and lower back, which she rated at six out of ten. (Tr. 726.) Dr. Brown's impression was arthritis, obesity, and anxiety. (Tr. 727.) He referred her to the Huron Pain Clinic. (Tr. 728.)

On May 9, 2007, Walker presented at the Fairview Hospital ER with complaints of generalized muscle pain. (Tr. 676-78.) She was advised to use Tylenol. *Id*.

*Hearing Testimony*

Walker testified that she has five children under the age of eighteen. (Tr. 888.) She stated that her husband is primarily responsible for taking care of the children's needs. (Tr. 889.) She testified that she would like to work, but cannot because of her sensitivity to touch. (Tr. 891.) In response to a question from the ME, she stated that she is not diabetic. (Tr. 892.) She stated her weight had not fluctuated substantially and that she weighed 300 pounds. (Tr. 895.) Although she could not bend or stoop, she could see and hear without difficulty. (Tr. 896.) She stated that she was prescribed a quad cane by the Fairview ER and used it daily. (Tr. 898.) She also stated that she spends most of the day in bed, getting up for no more than three hours due to pain. (Tr. 903.) She has been prescribed many different pain medications, but none have provided relief. (Tr. 904.)

The ME testified that Walker's medical history included lower back pain that was first noted in June 2004, but began in 1999. (Tr. 893.) He stated that an MRI from 2003 and an EMG from 2004 were both within normal limits. *Id*. The ME also observed that Walker was morbidly obese. *Id*. The ME also noted Walker's pelvic fracture repair surgery in November of 2004, which was resolved by April of 2005. *Id*. The ME acknowledged that Walker was diagnosed with fibromyalgia after examination revealed ten out of eighteen trigger points for pain were positive. *Id*. Despite seeing physicians for pain management and medication,

Walker's symptomology persisted. (Tr. 911.) Although the ME stated that there was no evidence to disagree with Dr. Derrow's RFC assessment that Walker was capable of performing medium work, the probability of fibromyalgia caused him to reduce her exertional level to light work. (Tr. 893-94.) Thus, he opined that Walker could lift up to 20 pounds occasionally and 10 pounds frequently, and sit, stand, and walk without limitation. (Tr. 894.)

The ALJ asked the VE to consider a hypothetical individual with Walker's age, education, and prior relevant work experience, who could perform work that required lifting, carrying, pushing and pulling up to twenty pounds occasionally and up to ten pounds frequently. (Tr. 914.) Such an individual could also sit, stand and walk for up to eight hours a day, but could not stoop or bend frequently. *Id*. Further, such a person could not tolerate exposure to high concentrations of dust, fumes or gases, and should not drive, or work near unprotected heights, ladders, scaffolds, moving machinery, or hazards. (Tr. 914-15.) In response, the VE testified that such an individual could perform the following unskilled light work: a bench assembler (900 regional jobs, 185,000 national); wire worker (1,200 regional, 190,000 national); and electronics worker (600 regional, 95,000 national). (Tr. 916.) If a sit/stand option is included, the VE stated that the number of jobs previously identified would be reduced as follows: bench assembler (400 regional, 70,000 national); wire worker (500 regional, 70,000 national); and electronics worker (400 regional, 60,000 national). (Tr. 916-17).

### III. Standard for Disability

In order to establish entitlement to disability benefits under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or

combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant may be entitled to receive SSI benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Walker established medically determinable, severe impairments, due to fibromyalgia and obesity. However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Walker has no past relevant work activities, but has a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the VE testimony and the Medical Vocational Guidelines ("the grid") as a framework to determine that Walker is not disabled.

---

[2] The entire five-step process entails the following: First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent him from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI.  Analysis

Walker claims the ALJ erred by: (1) failing to follow the requirements of SSR 96-7p and 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3) with respect to his credibility finding; and, (2) improperly rejecting the findings of treating and examining physicians in favor of a non-examining expert who was unqualified to assess fibromyalgia.  (Doc. No. 16.)

*Credibility Determination*

Walker argues that the ALJ, while acknowledging that he was required to follow SSR 96-7p and 20 C.F.R. § 416.929(c), failed to do so when finding that she was not credible.  (Pl.'s Br. at 13.)

A claimant's subjective statements concerning her symptoms are not enough to establish disability.  *See* SSR 96-7p, Introduction.  When a claimant alleges symptoms of disabling

10

severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." *Id*. If these claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record. *Id*. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky v. Bowen,* 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross*, 373 F. Supp. 2d at 733 (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96-7p, Purpose. Beyond medical evidence, there are seven factors that the ALJ

11

should consider.[3] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

Here, the ALJ was clearly conscious of his responsibility to conduct a credibility analysis. He accurately set forth the factors to be considered. (Tr. 22.) The ALJ found that Walker's impairments could reasonably be expected to produce the symptoms alleged, but that Walker's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (Tr. 19.) It is undisputed that Walker was diagnosed with fibromyalgia.[4] As explained by other courts, it is difficult to find corroborative medical evidence in fibromyalgia cases.

> Fibromyalgia, also referred to as fibrositis, is a medical condition marked by "chronic diffuse widespread aching and stiffness of muscles and soft tissues." *Stedman's Medical Dictionary for the Health Professions and Nursing* at 541 (5th ed. 2005). We note also that ours is not the only circuit to recognize the medical diagnosis of fibromyalgia as well as the difficulties associated with this diagnosis and the treatment for this condition. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that fibromyalgia's "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective");

---

[3] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 375 F. Supp. 2d 724, 732 (N.D. Ohio 2005).

[4] The Court recognizes that a diagnosis alone does not indicate the functional limitations caused by the disability. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of an impairment does not indicate the impairment is of disabling severity).

> *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003) (noting that "a growing number of courts . . . have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease") (internal quotation marks and citations omitted); *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) ("'Because proving the disease is difficult . . ., fibromyalgia presents a conundrum for insurers and courts evaluating disability claims.'") (*quoting Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1067 (9th Cir. 1999)).

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 n. 3. (6th Cir. 2007); *see also Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988); *Hawkins v. FirstUnion Corp. Long-Term Disability Plan*, 326 F.3d 914, 915 (3rd Cir. 2003). Therefore, objective medical evidence corroborating allegations of pain will most likely be nonexistent, resulting in even greater emphasis on the credibility of a claimant's subjective allegations of the severity of her pain.

> The ALJ's credibility discussion reads as follows:
>
> Thus, as discussed above, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision. In addition, consideration of the factors described in 20 CFR 404.1529(c)(3)/416.929(c)(3) and Social Security Ruling 96-7p also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted and that the residual functional capacity finding in this case is justified. The claimant has provided inconsistent information which weakens the veracity of her statements regarding the severity of her symptoms and any attending limitations. As noted above, there are several instances in which the claimant appeared to exaggerate the severity of her symptoms as compared to the radiological and MRI findings. While the claimant testified that she uses a cane daily, this is not supported by reference to cane use in the record. Furthermore, I find that the claimant's testimony was vague. She testified that she was unable to walk long distances but this was not clarified.

(Tr. 22.)

> Because of the nature of the disease, there are no objective tests that can support

13

Walker's claim concerning the severity of her symptoms. The ALJ's finding expressly states that her allegations are not credible based on the lack of objective medical evidence. He further states that her veracity is undermined because her symptoms are exaggerated when compared to objective medical test results. The ALJ's reliance on the lack of corroborating tests in this context is unreasonable. Furthermore, his superficial reference to SSR 96-7p is insufficient. His credibility finding does not discuss Walker's daily activities, the level or duration of her pain, factors that aggravate her pain, or the medication/treatment she has taken to alleviate her pain and its effect. The Commissioner argues that while some claimants "may have such a severe case of fibromyalgia as to be totally disabled from working ... most do not." (Doc. No. 18 at 19, *citing Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). It is beyond this Court's review, however, to decide whether Walker's fibromyalgia is of disabling severity. The shortcoming in the ALJ's decision is not that his conclusion is untenable, but rather that the credibility determination did not follow the Agency's required procedures. "[A court] cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet*, 78 F.3d at 307. As such, Walker's argument that the ALJ failed to properly articulate a basis for his credibility finding is well-taken. However, a reversal and award of benefits is not warranted. The ALJ's reliance on the lack of corroborating tests in this context is unreasonable. Furthermore, his superficial reference to SSR 96-7p is insufficient. His credibility finding does not discuss Walker's daily activities, the level or duration of her pain, factors that aggravate her pain, or the medication/treatment she has taken to alleviate her pain and its effect. The Commissioner argues that while some

claimants "may have such a severe case of fibromyalgia as to be totally disabled from working ... most do not." (Doc. No. 18 at 19, *citing Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). It is beyond this Court's review, however, to decide whether Walker's fibromyalgia is of disabling severity. The shortcoming in the ALJ's decision is not that his conclusion is untenable, but rather that the credibility determination did not follow the Agency's required procedures. "[A court] cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet*, 78 F.3d at 307. As such, Walker's argument that the ALJ failed to properly articulate a basis for his credibility finding is well-taken. However, a reversal and award of benefits is not warranted.

### *Treating and Examining Physicians*

Walker argues that the ALJ improperly rejecting the findings of treating and examining physicians in favor of a non-examining expert who was unqualified to assess fibromyalgia. In many respects, this claim rehashes the same arguments made in Walker's first assignment of error. As the Court finds a remand is appropriate, Walker's second assignment of error is rendered moot.

For the foregoing reasons, this case must be remanded in order for the ALJ to issue a new decision containing an analysis that sufficiently addresses the factors set forth in SSR 96-7p.

## VII.  Decision

Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Greg White<br>
U.S. Magistrate Judge

Date: October 23, 2009.